UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN C. MORRIS,<br><br>                    Defendant. | Criminal Action No. 12-154 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant John C. Morris' emergency motion for compassionate release. Def.'s Emergency Mot. to Reduce Sentence Pursuant to the Compassionate Release Statute 18 U.S.C. § 3582(c)(1)(A)(i) ("Def.'s Mot."), ECF No. 38. Defendant is 71 years old and "is set to be released from BOP custody on June 17, 2020." *Id*. at 1–2. He fears that his advanced age, and his "diagnosed health conditions of Chronic Obstructive Pulmonary Disease (COPD) and Hypertension" put him at particular risk of contracting and facing severe complications from the effects of COVID-19, currently the cause of a worldwide pandemic and national emergency. *Id*. at 1.[1] The government opposes defendant's early release. Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), ECF No. 42. For the reasons set forth below, defendant's motion is granted and his sentence of imprisonment is reduced to a sentence of time served.

---

[1] *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, OFFICE OF THE PRESIDENT OF THE UNITED STATES, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited May 24, 2020).

1

**I.     BACKGROUND**

On March 22, 2012, defendant entered a bank in Northeast Washington, D.C. and demanded money from the tellers. Gov't Opp'n at 2. He told them that if they did not cooperate, he would detonate a bomb that he controlled from his phone. *Id*. The tellers handed him $3,718 in cash and defendant turned to leave. Unbeknownst to him, inside some of that cash were several dye packs designed to detonate if they left the vicinity of the bank. *Id*. Not long after he exited, Metropolitan Police Department officers found him across the street from the bank with red smoke pouring from a bag in his hands. *Id*. He immediately confessed to having robbed the bank. *Id*. A search of his belongings and the bank revealed that there was never any bomb—that was merely a ruse. *Id*.

Defendant was indicted on July 6, 2012, and plead *nolo conentdere* on April 3, 2013, to one count of bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d). Indictment at 1, ECF No. 5; Min. Entry (Apr. 3, 2013); Amended Judgment at 1, ECF No. 26. Owing in large part to his lengthy criminal history, defendant's advisory guideline sentencing range was 210 to 262 months' incarceration. Presentence Investigation Report ("PSR") ¶ 96, ECF No. 19. The government sought a below-guidelines' sentence of 188 months, based in part on its belief that the defendant was entitled to a slightly lower offense level calculation than had been described in the PSR. Gov't Mem. in Aid of Sentencing at 4, ECF No. 22. In the end, the sentencing judge determined that labeling defendant as a career offender, while legally tenable, resulted in an overly harsh sentence. Sentencing Hr'g Tr. at 20:3–13, ECF No. 28.[2] Absent career offender status, the sentencing judge calculated that defendant's sentencing range would be between 92

---

[2] This case was reassigned to the undersigned on June 14, 2016.

and 115 months, *id.*, and proceeded to impose a prison sentence at the top of that range, with five years' supervised release to follow. *Id.* at 20:14–18.

Defendant, now 71 years old, has served just over eight years of that nearly ten-year sentence, and with credit for good time served, is projected to be released in less than a month, on June 17, 2020. Gov't Opp'n, Ex. A at 1, ECF No. 42-1. He is confined at USP Lewisburg, a federal prison in Lewisburg, Pennsylvania. Def.'s Mot. at 2. As the COVID-19 pandemic has swept through the country, he has grown increasingly anxious to leave, especially in light of his diagnosed hypertension and chronic obstructive pulmonary disease ("COPD"). Def.'s Mot. at 1. In an attempt to secure release, defendant says that on April 29, 2020, he submitted a request for release to home confinement or for early termination of his imprisonment to the warden at USP Lewisburg, but neither defendant nor the government has been able to locate record of that request. Def.'s Mot. at 9; Gov't Opp'n at 4. Defendant thus submitted another request to his warden on May 8, 2020, the same day he submitted the instant motion to this Court. He has yet to receive a response from the warden. Def.'s Mot. at 9. The government submitted its opposition to his request for release on May 14, 2020.

## II.   LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United* States, 564 U.S. 522, 526 (2011). As originally enacted, one such exception, codified in section 3582(c)(1)(A), empowered the BOP Director to "petition the court for a reduction in . . . sentence" and gave courts the authority to grant those petitions if they found "that the reduction was justified by 'extraordinary and compelling reasons.'" S. Rep. 98-

223 at 118; *see also* Pub. L. No. 98-473, Title II, § 212(a)(2).[3] As amended in the First Step Act of 2018, Pub. L. No. 115-391, the exception in section 3582(c)(1)(A) is expanded to authorize a defendant directly to file a motion for such compassionate release with the court after he exhausts his "administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate release] motion" on his behalf or he waits at least "30 days" after he delivers his request for compassionate release to "the warden of [his] facility." 18 U.S.C. § 3582(c)(1)(A).

In resolving motions for compassionate release, the court may reduce a term of imprisonment only "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," *id.*, and upon making two findings: first, that "extraordinary and compelling reasons warrant such a reduction," *id*. § 3582(c)(1)(A)(i)[4]; and, second, "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," *id*. § 3582(c)(1)(A).[5]

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended by the Commission on November 1, 2016, applies to motions for reduction of terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A), and provides guidance as

---

[3] As originally enacted, 18 U.S.C. § 3582 read as follows:

> The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission.

Pub. L. No. 98-473, Title II, § 212(a)(2).

[4] Though not relevant to the instant motion, the court may also reduce a prisoner's sentence if he is "at least 70 years of age" and has served at least 30 years in prison, when BOP has determined "that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii).

[5] The Sentencing Commission is tasked, in its organic statute, with promulgating general policy statements regarding "the sentence modification provisions set forth in section[] . . . 3582(c) of title 18," 28 U.S.C. § 994(a)(2), and "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," *id*. § 994(t).

to both of the statutorily required findings. It states that a reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age and a minimum incarceration period, U.S.S.G. § 1B1.13(1)(A)–(B); (2) the defendant poses no danger to the safety of any other person or the community, *id.* § 1B1.13(2); and (3) "the reduction is consistent with [the] policy statement," *id.* § 1B1.13(3). The commentary to this policy statement then describes four "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction": (1) the medical condition of the defendant, who "is suffering from a terminal illness" or has chronic and "substantially diminish[ed] . . . ability . . . to provide self-care" within the prison environment, *id.* § 1B1.13, cmt. n.1(A); (2) the defendant is at least 65 years old, with a serious deterioration in physical or mental health, after serving at least 10 years or 75 percent of the prison term, "whichever is less," *id.* § 1B1.13, cmt. n.1(B); (3) "[f]amily [c]ircumstances" of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or the incapacitation of the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner," *id.* § 1B1.13, cmt. n.1(C); and (4) "[o]ther [r]easons" found by the BOP Director to present an extraordinary and compelling reason "other than, or in combination with," the reasons specified in the policy statement, *id.* § 1B1.13, cmt. n.1(D).

## III.     DISCUSSION

The government opposes defendant's request for compassionate release, contending, first, that defendant's failure to meet the compassionate release statute's exhaustion requirements leaves this Court without jurisdiction. Next the government contends that, even if jurisdiction is

proper, the exhaustion requirement is a "mandatory" claim-processing rule that, once raised, admits of no exception. Third, the government argues that, even if the exhaustion requirement is subject to limited exceptions, this case is not exceptional. Finally, should the Court determine that defendant's case overcomes all three of its asserted procedural roadblocks, defendant has nonetheless failed to show he meets the compassionate release statute's substantive requirements. The government is wrong on all four counts.

### A. The Compassionate Release Statute's "Exhaustion" Requirement Is Not Jurisdictional

The government first argues that unless defendant "fully exhaust[ed] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or waited at least 30 days after submitting a request to his warden, 18 U.S.C. § 3582(c)(1)(A), this Court lacks jurisdiction. The Courts of this District, however, have "consistently concluded that section 3582(c)(1)(A)'s exhaustion requirement is *not* jurisdictional." *United States v. Johnson*, Criminal No. 15-cr-125 (KBJ), 2020 WL 2515856, *3 & n.2 (D.D.C. May 16, 2020) (emphasis in original) (collecting cases). This Court joins the chorus.[6]

The Supreme Court has cautioned against ignoring the "important distinctions between jurisdictional prescriptions and claim-processing rules." *Reed Elsevier, Inc. v. Muchnick*, 559

---

[6] On three occasions, this Court denied compassionate release motions, citing, in part, the defendant failure to exhaust administrative remedies. *See* Min. Order (May 1, 2020), *United States v. Burnette*, Crim. Case No. 18-329 (BAH) (D.D.C. May 1, 2020) ("*Burnette* Min. Order"); Min. Order (Apr. 17, 2020), *United States v. Bikundi*, Crim Case No. 14-30-2 (BAH) (D.D.C. Apr. 17 2020) ("*Bikundi* Min. Order"). In two of those cases, the defendant failed both to attempt exhausting administrative remedies and to provide any explanation as to why such an attempt would be futile or otherwise unnecessary. *Burnette* Min. Order ("Nothing in the defendant's motion indicates that he has . . . even submitted a request that [BOP] bring a motion for compassionate release on his behalf."); *Bikundi* Min. Order (explaining that "while the exhaustion requirement may be waivable" the defendant had failed to show any "futility or exigency" justifying such a waiver). In the third case, this Court determined that, although a defendant had failed to exhaust administrative remedies, "his motion would still be denied" even if he had "because he . . . [fell] short of showing 'extraordinary and compelling reasons' warranting compassionate release." *United States v. Goldberg*, Crim. Case No. 12-180 (BAH), 2020 WL 1853298, *3 (D.D.C. Apr. 13, 2020). This case thus presents the first opportunity this Court has had to squarely address the jurisdictional or nonjurisdictional nature of section 3582(c)(1)(A)'s exhaustion requirement and its amenability to waiver.

U.S. 154, 161 (2010). Only the former "refer[] to a court's adjudicatory authority," *id*. (internal quotation marks omitted), and "harsh consequences" thus "attend the jurisdictional brand," *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (internal quotation marks and alteration omitted). Namely, absent jurisdiction, a court lacks "all authority to hear a case" and must dismiss. *U.S. v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015). A jurisdictional rule, therefore, must not be inferred lightly. Indeed, the Supreme Court has "repeatedly held that procedural rules . . . cabin a court's power only if Congress has 'clearly state[d]' as much." *Id*. (alteration in original). Without such a clear statement, the court must "treat the restriction as nonjurisdictional in character." *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013) (internal quotation marks omitted) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)); *see also Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) ("We presume exhaustion is non-jurisdictional unless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision.'" (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 19844))).

No clear jurisdictional statement is found in the compassionate release statute. True, no "magic words" are required for Congress to use "to render a prescription jurisdictional," *Davis*, 139 S. Ct. at 1850, as a statute's limit on a court's adjudicatory authority may be divined from its "context, including" past judicial "interpretation[s] of similar provisions." *Muchnick*, 559 U.S. at 168. As for context, while expounding on another provision within section 3582, several circuits have explained that "[section] 3582 is not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment" and "subsection (c)" in particular is not "phrased in jurisdictional terms." *United States v. Taylor*, 778 F.3d 667,

671 (7th Cir. 2015); *see also United States v. Calton*, 900 F.3d 706, 711 (5th Cir. 2018) (same). Moreover, the compassionate release statute is certainly less jurisdictional in tone than other statutory exhaustion requirements the D.C. Circuit has found nonjurisdictional. *See, e.g.*, *Munsell v. Dep't of Agriculture*, 509 F.3d 572, 579–81 (D.C. Cir. 2007) (finding nonjurisdictional a statute that provided "a person *shall* exhaust all administrative appeal procedures . . . before the person may bring an action in a court of competent jurisdiction" (emphasis added)). Textual and contextual clues alike thus counsel in favor of reading section 3582(c)(1)(A) as a nonjurisdictional claim-processing rule.

      **B.    The Compassionate Release Statute's "Exhaustion" Requirement Is Subject To Equitable Exceptions**

Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Although they do not constrict a court's adjudicatory authority, they still serve an important function. *Id*. Some are so important as to be "mandatory" when their restrictions are properly raised. *Davis*, 139 S. Ct. at 1849. Others, however, are "nonmandatory" and subject to certain equitable exceptions. *Young v. SEC*, 956 F.3d 650, 654–55 (D.C. Cir. 2020). The government says the compassionate release statute's exhaustion requirement falls into the former category.

At the outset, the government's current position is at odds with the position it has taken in other cases in this District. *See, e.g.,* Joint Submission Regarding Defendant Ghorbani's Motion for Reduction of Sentence Pursuant to Compassionate Release, *U.S. v. Ghorbani*, Crim. No. 18-255-2 (PLF), ECF No. 129, 2 n.1 (D.D.C. Apr. 3, 2020) ("While 18 U.S.C. § 3582(c)(1)(A)(i) includes an exhaustion requirement, a Court can dispense with the administrative exhaustion requirement where, as here, there are exceptional circumstances of peculiar urgency." (internal

quotation marks omitted)). To its credit, the government acknowledges this, but now asserts that its former position was an "error" it "regret[s]." Gov't Opp'n at 12 n.4. As support for its new position, the government points to two Supreme Court cases for the proposition that "[w]here Congress specifically mandates, exhaustion is required." Gov't Opp'n at 13 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)); *id*. (citing *Ross v. Blake*, 136 S. Ct. 1850 (2016)).

In *Ross*, the Supreme Court considered the Prison Litigation Reform Act's ("PLRA") command that "[n]o action shall be brought . . . by a prisoner . . . until such administrative remedies as are available are exhausted." *Ross*, 136 S. Ct. at 1856 (quoting 42 U.S.C. § 1997e(a)). The Court rejected, as contrary to that statute's text, a judicially created exception for instances in which "certain special circumstances" meant that, "though administrative remedies may have been available, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Id*. (internal quotation marks and alteration omitted). The Court, in concluding that "[t]he PLRA's history (just like its text) . . . refutes a 'special circumstances' exception," *id*. at 1858, was careful to note that "an exhaustion provision with a different text and history . . . might be best read to give judges the leeway to create exceptions or to itself incorporate standard administrative-law exceptions," *id*. at 1858 n.2.

The text and history of the compassionate release statute's exhaustion requirement are, to state it mildly, different than the PLRA's. First, the compassionate release statute's exhaustion regime, which is tucked into the definition of the kinds of motions that may bring the issue of compassionate release before a court, 18 U.S.C. § 3582(c)(1)(A), stands in stark contrast to the PLRA's unequivocal pronouncement that "[n]o action shall be brought . . . until . . . administrative remedies . . . are exhausted." 42 U.S.C. § 1997e(a). The differing history of the two statutes is also notable. The PLRA's exhaustion requirement was intended to replace a

"statutory scheme [that] made exhaustion in large part discretionary" with one in which "[e]xhaustion is no longer left to the discretion of the district court." *Ross*, 136 S. Ct. at 1858 (internal quotation marks omitted) (first quoting *Porter v. Nussle*, 534 U.S. 516, 523 (2002) and then quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). By contrast, the amendment resulting in the compassionate release statute's exhaustion requirement came as part of an effort to increase the use of the compassionate release provision. Indeed, the section of the First Step Act that altered the Section 3582(c)(1)(A) was titled "Increasing the Use and Transparency of Compassionate Release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). The government's reliance on the Supreme Court's interpretation of a statute with a wildly different text and history, the only two considerations the *Ross* Court identified as relevant, is thus misplaced.

Analysis of the text and history of a statute are, of course, subservient to the "paramount" inquiry in analyzing exhaustion: "congressional intent." *McCarthy*, 503 U.S. at 144 (internal quotation marks omitted). As to that intent, to the extent exhaustion is required here, section 3582(c)(1)(A) does so only half-heartedly. In fact, the statute explicitly allows a defendant to file a compassionate release motion before he has exhausted his administrative remedies so long as he waits 30 days. This permission to file before the agency has had its say shows that the rationale for the compassionate release statute's "exhaustion" requirement is out of step with the typical justification for such requirements. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). The compassionate release statute may give BOP breathing room to take a first look at compassionate release motions, but it stops short of ensuring that BOP will have the opportunity to "apply its expertise." *Id.* If the

10

defendant is in a hurry, he need only wait a few weeks to bring his motion directly to the Court. Strict application of Section 3582(c)(1)(A)'s exhaustion regime will also not "moot" any "judicial controversies." *Id*. BOP has no power to reduce a defendant's sentence unilaterally, but only to file a motion requesting such a reduction. In this respect too, the compassionate release statute's exhaustion regime differs from all others. Whereas most exhaustion requirements aim to reduce judicial involvement in agency affairs, the statute at issue merely controls how judicial involvement will get started.

The text, context, and history of the compassionate release statute thus make clear that, far from enacting a bar to judicial review, "the 30-day rule was meant as an accelerant to judicial review." *United States v. Russo*, 16-cr-441 (LJL), 2020 WL 1862294, *6 (S.D.N.Y. Apr. 14, 2020) (internal quotation marks omitted). It would thus "pervert congressional intent to treat it as a substantial obstacle to effective judicial review." *Id*. Instead, Section 3582(c)(1)(A)'s reference to exhaustion falls into the category of "nonmandatory claim[]-processing" rules that are "flexible" even "when raised by an opposing party." *Young*, 956 F.3d at 655. In particular, this Court joins others in this District and around the country that have determined defendants need not fulfill the statute's exhaustion requirements when "there are exceptional circumstances of peculiar urgency or exhaustion would be futile." *Johnson*, 2020 WL 2515856 at *3 n.2 (collecting cases in this District); *see also United States v. Connell*, 18-cr-00281-RS-1, 2020 WL 2315858, *5 (N.D. Cal. May 8, 2020); *United States v. Lacy*, Case No. 15-cr-30038, 2020 WL 2093363, *5 (C.D. Ill. May 1, 2020) *United States v. Scparta*, 18-cr-578 (AJN), 2020 WL 1910481, *8 (S.D.N.Y. Apr. 20, 2020); *Russo*, 2020 WL 1862294, *6–7; *United States v. Haney*, 19-cr-541 (JSR), 2020 WL 1821988, *3 (S.D.N.Y. Apr. 13, 2020).

### C.     Awaiting BOP's Response To Defendant's Request Would Be Futile

The government next asserts that waiting 30 days from the time defendant sent in his May 8 request to his warden "is not futile because . . . BOP fully considers requests for sentence reductions."  Gov't Opp'n at 14.  The government once again misses the mark.

As noted above, defendant is set to be released on June 17, 2020.  The time for ordering effective relief under the compassionate release statute is thus already limited.  That time is even further restricted by the fact that any release ordered by this Court would need to allow for a "14-day quarantine period and medical clearance" in order to "minimize the possibility" that defendant carries COVID-19 from the prison into the community.  Gov't Opp'n at 22 n.15.  Moreover, BOP is not considering whether to grant defendant compassionate release, but is instead making the procedural decision of whether to file a compassionate release motion on his behalf.  Thus, even if, before the 30 days are up on June 7, BOP determines that it will file such a motion, the Court will still need to determine whether the motion should be granted.  As defendant correctly points out, "what is in dispute here" is thus "less than one month" and may, owing to the need for defendant's pre-release quarantine, realistically be less than two weeks.  In such circumstances, waiting for BOP to make a motion makes little sense, if indeed defendant's request is granted, especially in light of the fact that the motion will call upon the court to undertake an identical inquiry to the one called for by the instant motion.[7]  Given the peculiar circumstances of this case, the limited time remaining to fashion effective relief should it be warranted, and the pressing urgency presented by the COVID-19 pandemic, the Court waives the exhaustion requirement and will consider the motion on its merits.

---

[7]     The chances of defendant's request being granted by BOP are dubious at best.  The government points out, in the time since the passage of the First Step Act until mid-March 2020, BOP has only "consented to a reduction in sentence in 55 cases."  Gov't Opp'n at 15.  That figure suggests BOP rarely exercises its prerogative to move on a defendant's behalf.

### D.     Defendant Qualifies For Compassionate Release

The government next argues that "the defendant has not identified 'extraordinary and compelling reasons' for" a sentence reduction "within the meaning of § 3582(c)(1)(A) and the sentencing Commission's policy statement." Gov't Opp'n at 17. Defendant contends that "the extraordinary and compelling circumstances of COVID-19, coupled with [defendant's] pre-existing conditions, warrant compassionate release." Def.'s Mot. at 31 (capitalization altered). Defendant has the better argument.

As noted above, the compassionate release statute directs courts to consider the Sentencing Commission's policy statement for guidance on what constitutes extraordinary and compelling reasons warranting release. 18 U.S.C. § 3582(c)(1)(A) (explaining that a court "may reduce [a] term of imprisonment . . . [if] such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"). This Court has elsewhere explained that the policy statement is binding. *United States v. Goldberg,* Crim. Case No. 12-180 (BAH), 2020 WL 1853298, *4 (D.D.C. Apr. 13, 2020) (declining to "adopt the view of some courts that U.S.S.G. § 1B1.13 may be eschewed as outdated" and holding that "the limitations in U.S.S.G. § 1B1.13 apply and are binding"). That statement lists several circumstances that qualify as extraordinary and compelling reasons, including when "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This restricts a physical condition qualifying for compassionate release to those that are chronic and compromise a defendant's ability to provide "self-care," which typically refers to a defendant's ability to provide for his own activities of daily living, such as eating and drinking, toileting, washing and dressing, and mobilization. While requiring chronic, compromised "self-care" may

result in exclusion of otherwise serious physical conditions from qualifying as an "extraordinary and compelling reason" for compassionate release under this part of the commentary, the Commission proceeded to make clear the specific examples are by no means exclusive. Indeed, the commentary goes on to acknowledge "[o]ther [r]easons" that may present "an extraordinary and compelling reason other than, or in combination with, the reasons described in" the commentary. *Id.,* cmt. n.1(D). The COVID-19 pandemic presents such an "other reason," given the circumstances in this case.

Defendant's medical records show that he suffers from at least two serious chronic conditions: hypertension and Chronic Obstructive Pulmonary Disease. As the government acknowledges, in combination with defendant's age, these conditions "make him particularly vulnerable to severe COVID-19 infection." Gov't Opp'n at 20; *see also* People Who Are at Higher Risk for Severe Illness, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited on May 24, 2020) (listing as high-risk individuals, "[p]eople 65 years and older," "[p]eople with chronic lung disease," and "[p]eople who have serious heart conditions"). Although these conditions may be more easily controlled in normal circumstances, the threat of COVID-19 puts defendant in serious danger. "It can be hardly disputed that the novel strain of the coronavirus that causes COVID-19 is much more easily transmitted in the prison environment," *Johnson*, 2020 WL 2515856 at *9, and indeed, defendant's facility has already seen its first case, s*ee* COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 24, 2020) (noting that over 4,000 federal inmates currently have or have recovered from COVID-19 and that 59 inmates have died from the disease). Defendant's susceptibility to the worst effects of the disease mean that his medical

conditions "diminish[]" his ability "to provide self-care within the" prison environment in the midst of the current pandemic. He has thus demonstrated that extraordinary and compelling reasons warrant a reduction in his sentence. *Cf. Johnson*, 2020 WL 2515856 *10 (finding extraordinary and compelling reasons existed given a defendant's "pulmonary hypertension and obesity" put him at higher risk for the most serious effects of COVID-19).

The inquiry does not end there, however, as both statute and policy statement instruct courts to "consider[] the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable." U.S.S.G. § 1B1.13; *see also* 18 U.S.C. § 3582(c)(1)(A). The government gives perfunctory attention to these factors and in the end calls it a "close question[]." Gov't Opp'n at 20. The Court does not find the question close. Defendant's initial sentence doubtless complied with the factors set forth in 18 U.S.C. § 3553(a). It strains credulity, then, to suggest that knocking approximately two weeks off that nearly ten-year sentence renders it ineffective to achieve those same aims. Certainly, such a minimally lighter sentence has a nearly identical deterrent effect, 18 U.S.C. § 3553(a)(2)(B), protects the public to nearly the same extent, *id.* § 3553(a)(2)(C), and reflects the seriousness of his offense to the same degree, *id.* § 3553(a)(2)(A).

The final consideration required by the policy statement is whether the defendant is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). In this regard, the government points out that, although defendant is now 71 years old, the crime for which he is currently incarcerated was committed when he was 63. Moreover, the government notes that defendant has a single incident of "assault without serious injury" on his prison disciplinary record. Gov't Opp'n at 21 n.14. Defendant's long criminal history, stretching well into his adulthood also gives the Court pause in this regard. PSR at 6–16. It cannot be ignored,

however, that in his over eight years of incarceration, BOP has recorded only one incident of any severity. Defendant's release approximately two weeks early, furthermore, will not pose any more of a risk to the community than had his release proceeded as scheduled. The Court finds that defendant does not present a danger to his community.

**IV.     ORDER**

Defendant's motion is properly before this Court and he has demonstrated that a reduction in his sentence comports with the factors laid out in 18 U.S.C. § 3553(a), extraordinary and compelling reasons exist for that reduction, and he does not pose a risk to the community. Reducing his sentence to time-served is thus amply justified. 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is hereby

**ORDERED** that defendant's previous sentence of 115 months' imprisonment is reduced to time-served; it is further

**ORDERED** that defendant be released as soon as is practicable; and it is further

**ORDERED** that the defendant abide by all supervised release conditions imposed in the original judgment.[8]

**SO ORDERED.**

Date: May 24, 2020

_____<br>
BERYL A. HOWELL<br>
Chief Judge

---

[8]  18 U.S.C. § 3582(c)(1)(A) provides only for reductions of "imposed term[s] of imprisonment," and provides no authority to adjust terms of supervised release. While other provisions of law may provide such authority, the Court's power under the instant motion is limited to adjusting defendant's term of imprisonment.